der Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 223 | DATE | 12/9/2003 |
| CASE TITLE | Minuteman International, Inc. vs. Nilfisk-Advance A/S, and Nilfisk Advance, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Claim Construction

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The claims of the '094 patent are construed as set forth in the attached memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 11 2003 date docketed | 29 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | slf (lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MINUTEMAN INTERNATIONAL, INC., | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| | ) NO. 03 C 223 |
| | )<br>) HONORABLE DAVID H. COAR |
| v. | )<br>)<br>)<br>) |
| NILFISK-ADVANCE A/S, AND<br>NILFISK-ADVANCE, INC., | )<br>)<br>) |
| Defendants | )<br>) |

DOCKETED
DEC 1 1 2003

## MEMORANDUM OPINION AND ORDER

Minuteman International, Inc. ("Minuteman" or "Plaintiff") filed suit against Nilfisk-Advance A/S and Nilfisk-Advance, Inc., (collectively "Nilfisk-Advance" or "Defendants"), alleging that Defendants infringed U.S. Patent No. 4,759, 094 (the "'094 patent") with their commercial floor cleaning machines. On October 30, 2003, this Court held a hearing in accordance with Markman v. Westview Instruments, Inc., 52 F.3d 967, 979-81 (Fed. Cir. 1995). This Court's construction of the claims at issue in this case is set forth below.



# I. Legal Standard

As a matter of law, the Court must construe the claims of the patent in suit for the jury. Markman, 52 F.3d at 979. The process of claim construction gives "proper meaning to the claim language." Abtox, Inc., v. Exitron Corp., 122 F.3d 1019, 1023 (Fed. Cir. 1997). Likewise, claim construction is crucial in that it "defines the scope of the protected invention." Id.

Claim construction analysis begins with the words of the claim. Teleflex v. Ficosa North American Corp., 299 F.3d 1313, 1324 (Fed. Cir. 2002). "The claim language defines the bounds of the claim scope." Id. "[T]he language of the claim frames and ultimately resolves all issues of claim interpretation." Abtox, Inc. v. Exitron Corp., 122 F.3d 1019, 1023 (Fed. Cir. 1997). The words of the claim are interpreted in light of the intrinsic evidence of record. Teleflex, 299 F.3d at 1324. This intrinsic record includes the written descriptions, the drawings, and the prosecution history, if in evidence, which all may provide clarification about the meaning of claim terms. Id. In the absence of an express intent to impart a novel meaning to claim terms, there is a "heavy presumption" that a claim term carries its ordinary and customary meaning. Teleflex, 299 F.3d at 1325. The ordinary meaning of a claim may be determined from any of a number of sources, including the claims themselves, other intrinsic evidence, including the written description and prosecution history, and dictionaries and treatises. Id. (citations omitted). In all cases, the ordinary meaning must be determined from the standpoint of a person of ordinary skill in the relevant art. Id.

Specification is the intrinsic evidence often deemed the "single best guide to the meaning of a disputed term." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed Cir. 1996). The specification can assist the court in determining whether the patentee has limited the scope

of the claims. Teleflex, 299 F.3d at 1325. Furthermore, the specification can resolve ambiguities between the ordinary and customary meaning of words, if the words used in the claim are not sufficiently clear to allow the scope of the claim to be determined from words alone. Id.

However, while the claims must be read in view of the specification, limitations from the specification are not to be read into the claims. Id. at 1326. "That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." Raytheon Co. v. Roper Corp., 724 F.2d 951, 957 (Fed. Cir. 1983). However, "where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims...might be considered broad enough to encompass the feature in question." Sciemed Life Sys. v. Advanced Cardiovascular Sys., 242 F.3d 1337, 1341 (Fed. Cir. 2001).

If, after considering intrinsic evidence, the meaning of the disputed terms are still ambiguous, courts will consider extrinsic evidence. Kopycake Enters., Inc. v. Lucks Co., 264 F.3d 1377, 1381 (Fed. Cir. 2001). Although a dictionary is considered extrinsic evidence, "[j]udges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996).

Once the court has determined the meaning to one of ordinary skill in the art of the disputed term, the court will examine the written description and drawings to be certain that the

patentee's use of the term is consistent with the meaning determined by the court. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001). The drawings and written description are examined "to determine whether the patentee has disclaimed subject matter or has otherwise limited the scope of the claims." Id. at 1343. The court should also examine the prosecution history to determine whether the patentee ascribed a particular meaning to the term inconsistent with the term's ordinary meaning. Vitronics, 90 F.3d at 1582. Finally, any meaning that was disclaimed during prosecution of the patent as revealed by the prosecution history is excluded. Vitronics, 90 F.3d at 1583.

## II. Discussion

The '094 patent was filed on October 19, 1987, and was issued on July 26, 1988. The issued and allowed patent claims were unchanged from that which was originally filed in the Patent Office. The Parties dispute certain terms and phrases in Claim 1, the only independent claim of the '094 patent. The disputed terms in Claim 1 will be construed by the Court.

### A. The Language of Claim 1

The language of Claim 1 is set forth below, with the disputed language underlined and in boldface type:

A machine for cleaning a surface including

a chassis;

a plurality of wheels mounted to said chassis for supporting the same;

storage means including a solution tank and a recovery tank for storing clean solution and spent solution respectively and mounted on said chassis in side-by-side relation and having a common opening;

-4-

dispensing means receiving solution from said solution tank for applying the same to the surface to be treated;

recovery means carried by said chassis for recovering said solution after application to said surface and for depositing the recovered solution in said recovery tank;

a molded pocket of a material and thickness sufficient to retain a **preformed** shape under its own weight and flexible enough to be **inverted** to a correspondingly similar inverted shape and defining a **lateral opening**; and

**means for mounting** said pocket to said storage means with said lateral opening of said pocket proximate said common opening of said storage and recovery tanks, **whereby when cleaning solution is placed in said solution tank and said recovery tank is empty**, said pocket extends substantially entirely into said recovery tank in said preformed shape under force of the weight of said solution, and when said recovery tank is storing spent solution and said cleaning tank is substantially empty, the force of said spent solution inverts said pocket and forces it to extend substantially entirely into said solution tank such that said spent solution does not contact the interior of said solution tank.

*1. Preformed*

Plaintiff Minuteman contends that the term "preformed", if determined to require further definition, should be construed to mean "formed before." Defendants contend that "preformed" should be construed to mean "a predetermined shape." The specification is useful in resolving the parties' dispute over the meaning of the word "preformed." The specification describes the shape and flexibility of the molded pocket (Def. Ex. A, Col. 2, lines 8-10). In describing the molded pocket's shape, the specification explains, "The molded pocket is made of a synthetic rubber and is of a thickness that is flexible yet will retain its original shape under its own weight." Webster's Third International Dictionary defines "preformed" as, "to form beforehand", "shape previously", "to fix or determine the form of beforehand", or

"predetermine." Therefore, in light of the specification and the dictionary definitions of "preform", the construction most in line with the specification's guidelines is the Defendants' proposed definition. Therefore, the Court will construe "preformed" to mean "a predetermined shape."

*2. Inverted*

The parties also dispute the meaning of the term "inverted." The Plaintiff contends that "inverted" should be construed to mean, "to turn inwardly, fully or partially, during operation of the machine." Defendants seek to construe "inverted" to mean, "to turn inside out." Plaintiff Minuteman argues that its construction of "invert" is consistent with the specification's disclosure that the degree of inversion is dependant on the extent of the use of the machine (therefore, whether the molded pocket inverts fully or partially is dependant on the extent of the use of the machine). Additionally, Plaintiff contends its construction of "invert" is consistent with the definition provided by Webster's New Collegiate Dictionary, wherein "invert" is defined as, "to turn inward." Defendants, however, contend that while the Webster's Third International Dictionary has a range of meanings for invert, including, "to turn inside out or upside down", "to turn inward", and "reverse in position, order, or relationship", the specification identifies "turn inside out" as the meaning of invert. Furthermore, Defendants contend that the use of the phrase "to turn inside out" does not indicate the process of inversion must all occur in one instantaneous motion.

The specification of the '094 patent describes the inversion procedure in the following manner:

> As spent solution is accumulated in the recovery tank it builds along the concave exterior surface of the vertical end wall; and as the clean solution is removed from the solution tank, the level of recovered solution will eventually rise above the clean solution and act on the molded pocket, causing it to invert–that is, *turn itself inside out*–so that the pocket is translated into the clean tank as it does so.

See Def. Ex. A, Col. 2, lines 20-27 (emphasis added). Therefore, based on the language of the specification, the Court will define "invert" to mean "to turn inside out." Contrary to Plaintiff's argument in its briefs and at the October 30, 2003 Markman Hearing, the use of the phrase "to turn inside out" does not indicate that the process of inversion of the molded pocket must occur is one instantaneous action or that the molded pocket must turn itself completely inside out.

### 3. *Lateral opening*

Plaintiffs contend that the phrase "lateral opening", if determined to need further definition, should be defined as an "opening, situated on, directed towards, or coming from the side." Defendants contend that a lateral opening should be construed as a "side opening." Webster's Third New International Dictionary defines the term "lateral" as, "of or relating to the side: situated on, directed toward, or coming from the side." Therefore, the Court will construe "lateral opening" to mean, "an opening situated on, directed towards, or coming from the side."

*4. Means for mounting*

Plaintiff Minuteman contends that "means for mounting" should be defined as, "a structure comprising a peripheral flange of the flexible mounded pocket which is secured by a clamping or compression seal to the connecting flanges." Defendants contend that "means for mounting" should be construed to mean, "a peripheral flange of the molded pocket between two connecting flanges-with a rectangular steel frame member molded into the pocket flange." The Plaintiffs argue that the Defendants' proposed claim construction is too narrow. The Plaintiffs contend that an additional rectangular steel frame member molded into the pocket flange is added in the preferred embodiment "for strength," and provides the sole additional limitation of Claim 6 from the claim it is dependent upon (Claim 5). Minuteman argues that the inclusion of a rectangular steel frame in the construction of the term "means for mounting" would impermissibly read the limitations of the preferred embodiment into the claim (see E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir. 1988)).

The "means for mounting" clause is a means-plus-function limitation, invoking 35 U.S.C. § 112 ¶ 6, which states:

> an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

"Through the use of a means-plus-function limitation, patent applicants are allowed to claim an element of a combination functionally, without reciting structures for performing those functions." Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1371 (Fed. Cir. 2003).

In order to determine whether the phrase "rectangular steel frame" should be a part of the "means for mounting" claim construction, the Court will look to the specification, in order to determine how the means for mounting mechanism is described. In looking at Col. 1, line. 68-Col. 2, line. 8 of the specification (See Def. Ex. A), "means for mounting" is described in the following manner:

> The pocket has a peripheral flange extending about the opening which serves as a seal between the solution and the recovery tanks. The flange also provides an attachment means for the molded pocket to secure it to forward and rear housings of the machine. One of the housings, the forward housing in the illustrated embodiment, forms the clean solution (or simply "solution") tank, and the rear housing forms the spent solution (or "recovery" tank).

In addition, Col. 3, lines 31-34 of the specification (See Def. Ex. A) describes the "means for mounting" in further detail : "As seen in better detail... a peripheral flange of a flexible, molded pocket or boot, generally designated, is held between the two connecting flanges." In looking to the specification, it is clear that Plaintiffs are correct in their assertion that requiring "means for mounting" to include a rectangular steel frame would impermissibly read the limitations of the preferred embodiment into the claim. Therefore, the Court will construe "means for mounting" in the following manner: "a structure comprising a peripheral flange of the flexible mounded pocket which is secured by a clamping or compression seal to the connecting flanges."

*5. Whereby Clause*

The Plaintiff contends that no particular instruction should be given concerning the effect of the "whereby clause." Plaintiff Minuteman argues that no specific instruction beyond the general instruction to the jury that all limitations in the claim must be found in the accused device either literally or under the doctrine of equivalents should be given concerning the "whereby

clause" found in Claim 1 of the '094 patent. Defendants Nilfisk-Advance dispute the Plaintiff's contention. The Defendants request that the Court provide an instruction to the jury which states, "Claim one of the patent ends with the word 'whereby', followed by a description of how the molded pocket and storage tanks work together. These words, like the words that come before them, limit the scope of the invention by requiring that the molded pocket, the solution tank, and the recovery tank be able to do all of the things that are described."

Because both parties are in agreement that the "whereby clause" in Claim 1 is a claim limitation, the Court must decide if the jury should receive a specific instruction on the "whereby clause" beyond the general instruction on claim limitations that the jury will receive. The Court hereby determines that it is sufficient for the Court to indicate to the jury that the "whereby clause" is a claim limitation, and to indicate that all limitations in the claim must be found in the accused device either literally or under the doctrine of equivalents.

## III. Conclusion

For the foregoing reasons, the Court construes the disputed terms and phrases in the '094 patent as follows:

    The term "preformed" means "a predetermined shape";

    The term "inverted" means "to turn inside out";

    The phrase "lateral opening" means "an opening situated on, directed towards, or coming from the side";

The phrase "means for mounting" means "a structure comprising a peripheral flange of the flexible mounded pocket which is secured by a clamping or compression seal to the connecting flanges";

The Court will not give a specific instruction concerning the "whereby clause" in Claim 1, other than the general instruction that the Court will provide that all limitations must be found in the accused product either literally or under the doctrine of equivalents.

It is so ordered.

Enter:

*David H. Coar*

**David H. Coar**

**United States District Judge**

Dated: December 9, 2003