**United States District Court, Northern District of Illinois**

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 223 | **DATE** | 9/23/2004 |
| **CASE TITLE** | Minuteman International, Inc. vs. Nilfisk-Advance A/S, et al. | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment [Doc. No. 30]; Defendants' Motion to Strike [Doc. No. 37]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, Defendants' motion for summary judgment [Doc. No. 30] is GRANTED and judgment will be entered forthwith; Defendants' motion to strike [Doc. No. 37] is DENIED. Plaintiff is to file a response to Defendants' motion for attorneys' fees and costs on or before October 8, 2004. Defendant is to file a reply on or before October 15, 2004. Ruling to issue by mail. Enter final judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | SEP 2 8 2004 | | |
| | Notified counsel by telephone. | | date docketed | | 41 |
| X | Docketing to mail notices. | | | | |
| X | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| slf(lc) | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 SEP 27 PM 5: 35 | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCKETED

SEP 2 6 2004

| | | |
|---|---|---|
| MINUTEMAN INTERNATIONAL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 C 223 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| NILFISK-ADVANCE A/S AND NILFISK | ) | |
| ADVANCE, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Minuteman International, Inc. ("Minuteman" or "Plaintiff") has filed suit against Nilfisk-

Advance A/S and Nilfisk-Advance, Inc. (collectively, "Nilfisk" or "Defendants"), alleging that

Defendant infringed U.S. Patent No. 4,759,094 (the " '094 patent") by manufacturing and selling

AquaMax floor scrubbing machines. On October 30, 2003, this Court held a hearing in

accordance with Markman v. Westview Instruments, Inc., 52 F.3d 967, 979-81 (Fed. Cir. 1995),

and subsequently construed the claims at issue in this case in its December 9, 2003 Memorandum

Opinion and Order. Presently before this Court is Defendants' motion for summary judgment of

noninfringement, and Defendants' motion to strike several of Minuteman's documents filed in

opposition to Nilfisk's motion for summary judgment. For the reasons set forth below,

Defendants' motion to strike is DENIED; Defendants' motion for summary judgment of

noninfringement is GRANTED.

**DEFENDANTS' MOTION TO STRIKE**

Before addressing Defendants' motion for summary judgment, the Court must address Defendants' Motion to Strike. Nilfisk argues that based upon Minuteman's untimely filings and failure to produce certain evidence, the following documents should be stricken: (1) the expert report of Gary E. Palmer ("Palmer"), including its exhibits; (2) the supplemental expert report of Palmer, including its exhibits; (3) the declaration of Jesse V. Mondigo ("Mondigo"), including all exhibits; and (4) all arguments in Minuteman's opposition brief and all undisputed facts in Plaintiff's L.R. 56.1(b)(1) Statement that rely on the foregoing three documents for factual support. Nilfisk's arguments for the exclusion of these documents will be addressed in turn.

**I. Palmer's Supplemental Expert Report**

Nilfisk argues that Palmer's supplemental expert report should be stricken, because its late service violated the Court's scheduling order and the Parties' agreed deadline for expert disclosures, January 6, 2004. On January 19, 2004, Nilfisk's counsel took the deposition of Gary E. Palmer, which included questions about his expert report. Three days later, Nilfisk served Minuteman's counsel with the expert witness report of Richard F. Wulff, Nilfisk's rebuttal expert. On March 15, 2004, Plaintiff submitted, along with its memorandum opposing summary judgment, Palmer's supplemental expert report. Nilfisk contends that because Palmer's supplemental report references four new drawings by Jesse Mondigo that were not included in Palmer's first expert report (which according to Palmer, replaced the drawings attached to his first expert report), Minuteman is disclosing an entirely new theory of infringement after the expert discovery deadline has passed.

Rule 26(e)(1) of the Federal Rules of Civil Procedure provides guidance for the filing of supplemental expert reports. Rule 26(e)(1) states:

> A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of an expert, and any additions to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Therefore, the Court must look to the deadline for the Parties' Fed. R. Civ. P. 26(a)(3) ("Rule 26(a)(3)") disclosures. Rule 26(a)(3) states, "[u]nless otherwise directed by the court, these disclosures must be made at least 30 days before trial." The Court did not set a specific deadline for the Parties' Rule 26(a)(3) disclosures; therefore, any disclosures must have been made 30 days prior to trial. Minuteman submitted Palmer's supplemental expert report on March 15, 2004. At the time that Minuteman submitted Palmer's supplemental expert report, the parties' trial was set for July 2, 2004. Consequently, Palmer submitted his supplemental expert report in accordance with the federal rules of civil procedure. Therefore, Plaintiff will be allowed to use Palmer's supplemental expert report as evidence in its opposition to Defendants' motion for summary judgment.

Additionally, Nilfisk contends that Palmer's expert report should be stricken because Minuteman failed to seasonably supplement its response to Nilfisk's interrogatory number 4 before the close of fact or expert discovery. Rule 26(e)(2) provides guidance for supplementary interrogatory responses:

> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

"The duty to supplement discovery requests lingers on without solicitation by the requesting party." Allen v. Bake-Line Products, Inc., No. 98 C 1119, 2001 WL 883693 at *1 (N.D. Ill. 2001) (citing Marianjoy Rehab. Hosp. v. Williams Elec. Games, Inc., No. 94 C 4918 1996 WL 411395 (N.D. Ill. 1996)). If a party fails to supplement its interrogatory responses, the court may elect to exclude "all evidence related to the non-supplemented subject." Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd., No. 95 C 0673, 1996 WL 680243 at * 8 (N.D. Ill. 1996) (citing Holiday Inns, Inc. v. Robertshaw Controls Co., 560 F.2d 856, 858 (7thCir. 1977)). Fed. R. Civ. P. 37(c)(1) provides the procedure for addressing a party's failure to supplement an interrogatory response under Rule 26(e)(2). In pertinent part, Rule 37(c)(1) states:

> A party that without substantial justification fails to. . .amend a prior response to discovery as required by. . .Rule 26(e)(2) is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

Nilfisk was aware of the information that would have been in a supplemental interrogatory response when Minuteman filed Palmer's supplemental expert report, and this Court has determined that the information within that expert report was timely. Consequently, Nilfisk was not prejudiced by Minuteman's failure to supplement its interrogatory responses. Therefore, the Court will not exclude Palmer's expert report for failure to seasonably supplement his response interrogatory number 4.

## II. Defendants' Request to Exclude Certain Evidence Because of Minuteman's Failure to Produce The AquaMax Machine That Was the Basis of its Expert Reports

Defendants contend that all of the evidence that serves as factual support for Minuteman's infringement theories and expert reports relies on an AquaMax machine that was tested by Plaintiff's expert Mondigo in December 2002 and by Plaintiff's expert Palmer in July, August and December of 2003. All of the drawings submitted by Minuteman in support of its infringement arguments have been based on Mondigo's observations of this particular machine. Nilfisk has repeatedly requested to inspect this machine, yet Minuteman has repeatedly responded that the machine was unavailable. As of this date, Minuteman has not produced the machine. Defendants argue that they have been prejudiced by Plaintiff's failure to produce the machine it observed, as Defendants are unable to determine whether that machine was altered in any way, and if so, whether those alterations affected the machine's operations. Consequently, Defendants argue that Palmer's original and supplemental expert reports, and Mondigo's declaration (and all exhibits attached thereto) should be stricken.

"A party has a duty to preserve evidence over which it had control and 'reasonably knew or could reasonably foresee was material to a potential legal action.' " Wiginton v. Ellis, No. 02 C 6832, 2003 WL 22439865 at *4 (N.D. Ill. 2003) (quoting China Ocean Shipping (Group) Co. v. Simone Metals Inc., 1999 WL 96643 at * 3 (N.D. Ill. 1999)) ; see also Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., No. 02 C 1403, 2003 WL 21230605 at *4 (N.D. Ill. 2003). Courts are authorized to sanction a party for discovery violations, including the failure to preserve evidence that is material to the parties' litigation. Unquestionably, the machine upon which Minuteman

bases its infringement theory is crucial to this litigation. This is particularly so when a key dispute between the parties is the operation of the AquaMax machine.

"Courts generally have broad discretion in deciding the appropriate sanction for a party's discovery violation, and the type of sanction administered generally depends on the unique factual circumstances of the case." Kucala, 2003 WL 21230605 at * 4 (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976)). The court should impose sanctions that are proportionate to the offending conduct. Kucala, 2003 WL 21230605 at *4 (citing United States v. Golden Elevator, Inc., 27 F.3d 301, 303 (7th Cir. 1994)). Because this machine is such crucial evidence, the exclusion of any evidence resulting from Minuteman's observation of the machine's operations would essentially leave Plaintiff with no evidence to defeat Nilfisk's motion for summary judgment, thereby resulting in a default judgment for Defendants. The Seventh Circuit has directed that the harsh sanction of default be reserved for extreme circumstances, Ellingsworth v. Chrysler, 665 F.2d 180, 185 (7th Cir. 1981), though also noting that less drastic sanctions need not be a prerequisite for entry of default or dismissal. Halas v. Consumer Services, Inc., 16 F.3d 161,165 (7th Cir. 1994). However, courts usually reserve the harsh sanction of default when there is a "finding of contumacious conduct, dilatory tactics, the failure of less drastic sanctions, bad faith, willfulness, or fault." China Ocean Shipping (Group) Co., 1999 WL 966477 at *2 (citing Downs v. Westphal, 78 F.3d 1252, 1257 (7th Cir.) modified on other grounds, 87 F.3d 202 (1996)). Further, without a prior court order directing Minuteman to produce the machine in question, the exclusion of all evidence in support of Plaintiff's motion for summary judgment would be drastic. Consequently, the Court will not

exclude the evidence that is based on Minuteman's observations of the AquaMax machine that it has failed to produce.

### III. Additional Arguments by Defendant To Exclude Original Palmer Expert Report

Nilfisk contends that Palmer's original expert report should be stricken pursuant to Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702. Defendants maintain that one of the primary problems with Palmer's original expert report is that it relied heavily on Mondigo's first set of drawings. However, in his supplemental report, Palmer withdraws Mondigo's drawings that accompanied the first report, and attempts to replace them with the drawings of the supplemental report. Thus, Defendants argue, Palmer concedes that Mondigo's first set of drawings are unreliable.

Additionally, Nilfisk contends that Palmer admitted in his deposition that he never had access to: (a) any of the several depositions of Nilfisk's engineers who described in detail how the AquaMax worked; (b) the AquaMax bladder that Nilfisk produced to Minuteman; or (c) the technical drawings of the AquaMax that Nilfisk produced prior to Palmer's deposition. Further, Nilfisk contends that Mondigo's drawings submitted in Palmer's supplemental expert report are inconsistent with the drawings submitted in Palmer's original expert report. Defendants note that despite the inconsistencies between the two reports, in its memorandum in opposition to Nilfisk's motion for summary judgment, Minuteman cites Palmer's original expert report, which was based largely on Mondigo's original drawings. Finally, Nilfisk argues that a comparison of Minuteman's responses to Nilfisk's Interrogatory Numbers 4 and 15 with Palmer's original expert report show, in Nilfisk's opinion, that Palmer did not write his own report. Defendants note that Palmer's report and Minuteman's interrogatory response Number 4 are formatted in the

same manner, with two columns, and that the left column in both documents contains the claim language, while the right column contains Minuteman's allegations or Palmer's opinions. Finally, Nilfisk notes that Palmer admitted during his deposition that Minuteman's counsel typed the report for him and that the whole process took around "two hours." See Gary Palmer Dep. Tr., p.108, line 4 - p. 110, line 9.

Fed. R. Evid. 702 permits expert testimony only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Pursuant to Fed. R. Evid. 702, an expert may testify if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." Dhillon v. Crown Controls, Corp., 269 F.3d 865, 869 (7th Cir. 2001) (citing Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993)).

Undoubtedly, Palmer's supplemental expert report renders portions of his original expert report obsolete. However, the entire original expert report is not unreliable. Consequently, the Court will not strike the original expert report from the record. Additionally, Nilfisk's argument that Palmer's original expert report should be stricken because it is formatted in the same manner as his interrogatory responses lacks merit. While there may be some inconsistencies between the original and supplemental expert report, this will not result in a wholesale disregard of the original expert report.

For the foregoing reasons, Nilfisk's motion to strike certain documents filed by Minuteman in opposition to Nilfisk's motion for summary judgment is denied in its entirety.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. FACTS[1]

### A. The Field of the Invention

The '094 patent, issued on July 26, 1988, relates to a carpet cleaning machine which sprays cleaning solution on the carpet, and vacuums up the spent (i.e., dirty) solution after the carpet is scrubbed. See Def. Ex. A., col. 1, lines 5-11. The problem that the '094 patent sought to address is how to make maximum use of the available space within the machine for storing clean solution and spent solution, as greater capacity increases the machine operator's efficiency, and helps to reduce costs. Id. at col. 1, lines 15-23.

### B. The Prior Art

The prior art encompassed machines which increased the overall storage of a machine by including flexible membranes or bags that separate the clean solution from the spent solution. See Def. Ex. A, col. 1, lines 24-26. Of particular note is United States Patent Number 4,196,492 (the " '492 Patent"), wherein a flexible bag is attached to a collar, and the collar is mounted to a housing in a forward position in the scrubbing machine housing. Id. at col. 1, lines 27-31. Cleaning solution is placed in a bag. Id. at col. 1, lines 31-32. The interior of the housing is under vacuum and the spent solution is recovered and stored in the housing surrounding the flexible bag. Id. at col. 1, lines 32-34. However, the structure of the '492 patent allows spent or dirty solution to collect in all of the crevices of the housing, even those surrounding the flexible bag. Id. at col. 1, lines 34-37. Additionally, in order to clean the inside of the housing of the

---

[1] Unless otherwise noted, all facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statements of Undisputed Facts

residue deposited on the inside walls from the spent solution, it is necessary to remove the flexible bag and clean all of the interior surfaces of the housing, including the crevices beneath the flexible bag and the surfaces which contain it. Id. at col. 1, lines 37-42. Further, the outside surface of the flexible bag must be cleaned since it is in contact with the spent solution. Id. at col. 1, lines 42-44. In addition, the entire exterior of the bag must be cleaned after it is removed, since the dirty water is recovered by vacuum and deposited in the space around the bag, and the dirty water typically splashes about the interior of the housing and all over the bag. Id. at col. 1, lines 44-49.

### C. The '094 Patent

The '094 patent covers a floor cleaning machine with an internal wall in the form of a flexible, molded pocket. In the '094 patent, the molded pocket is mounted between two side-by-side tanks–a clean solution tank and a recovery tank. At the start of the cleaning cycle, the pocket extends into the recovery tank in its molded preformed shape, allowing the solution tank to "borrow" part of the recovery tank's volume. As cleaning solution is dispensed, the recovery tank begins to fill with spent solution, and the need for space becomes greater in the recovery tank than in the solution tank. Because the pocket can turn inside out, the incoming dirty solution inverts the pocket and forces it through the common opening into the now unused recovery tank. In this position, the inverted pocket has a shape that is correspondingly similar to its preformed shape.

A principal advantage of the '094 patent over the prior art is the provision of a scrubbing machine which makes use of the space in what is normally the recovery tank portion of the housing and which is typically not needed upon start up, when the amount of clean solution is at

-10-

a maximum. See Def. Ex. A, col. 1, lines 505-6. The machine then increases the storage volume

for the spent solution by making use of the space in which the clean solution was originally

stored. Id. at col.1, lines 56-59. The '094 patent achieves this result while facilitating cleaning

of the interior of the housing. Id. at col. 1, lines 59-61.

### D. The AquaMax Machine

Minuteman and Nilfisk present two very different versions of the structure and operation

of the AquaMax machine. Plaintiff believes that the AquaMax contains an outer housing which

forms a solution tank and recovery tank. Plaintiff also contends that the bladder of the AquaMax

is formed from a thick molder rubber which is very similar to the material of the movable pocket

of the '094 patent. Plaintiff also maintains that the top of the bladder includes a collar which is

secured to the top of the outer housing, and the bottom of the bladder includes a drain opening

which is secured to the bottom of the housing. In addition, Plaintiff asserts that the U-shaped

molded pocket portion of the AquaMax connections between the bladder and the outer housing

forms a bladder which extends in a forward motion from the top and bottom pocket which can

invert or turn inside out to the left when the solution tank is full of clean solution and which can

invert or turn inside out to the right when the solution tank is empty and the bladder is full of

recovered solution. Therefore, Minuteman contends, the molded pocket portion of the AquaMax

bladder acts in the same manner as the molded pocket of the '094 patent.

Conversely, Defendants contend that the outer hull of the AquaMax machine completely

encloses the bladder. Defendants believe that the cavity surrounding the AquaMax bladder acts

as one tank and the inside of the bladder acts as a second tank. Nilfisk also believes that the

AquaMax bladder and the cavity surrounding the bladder do not have any common openings.

Defendants also contend that the AquaMax bladder has a collapsed shape when both tanks are empty. Defendants assert that when solution is added, the front of the AquaMax bladder is held down by the weight of the fluid while the back of the bladder rises. Nilfisk believes that during the cleaning cycle, clean solution drains from the outer hull and the AquaMax bladder begins to fill with dirty solution, and at the end of the cleaning cycle, the AquaMax bladder is full of recovered solution and the solution tank is empty. Defendants believe that the position of the AquaMax bladder during the cleaning cycle has been demonstrated with an AquaMax machine that has large clear panels in the front and side of the upper hull. Finally, Nilfisk asserts that the AquaMax bladder has no seams, lines, markings or changes in material at the dividing line that Minuteman alleges exists between a "pocket portion" of the bladder and the "recovery tank portion."

## II. Legal Standards

### A. Summary Judgment Standard

The Court applies the same summary judgment standard to patent cases as it does to other types of cases. See e.g., Becton Dickinson and Co. v. C.R. Bard, Inc., 922 F.2d 792, 795-96 (Fed. Cir. 1990). A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. SunTiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327 (Fed. Cir. 1999) (citing Fed.R.Civ.P. 56(c)). Summary judgment should be granted only when no reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

It is the moving party's burden to demonstrate the absence of genuine issues of material fact for trial. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). To successfully oppose the motion for summary judgment, the non-moving party cannot rest on pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). A mere scintilla of evidence in support of the non-movant's position is insufficient. Anderson, 477 U.S. at 252.

### B. Legal Standard for Infringement

As previously stated, Nilfisk has moved for summary judgment on the basis of noninfringement. Infringement is a two-step analysis. SunTiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1334-35 (Fed. Cir. 1999) (citing Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998)). First, the court must interpret the claims to determine their scope and meaning. Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir. 2004) (citing Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998)). Second, the court must compare the properly construed claims to the allegedly infringing device. Id. To prove infringement, the patentee must show the accused device meets each claim limitation, either literally or under the doctrine of equivalents. Dynacore, 363 F.3d at 1272 (citing Deering Precision Instruments, L.L.C. v. Vector Distributions Systems, Inc., 347 F.3d 1314, 1324 (Fed. Cir. 2003)).

Infringement is properly decided on a motion for summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device–either literally or under the doctrine of equivalents. Gart v.

Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001) (citing Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998)). Infringement–whether it is determined literally or under the doctrine of equivalents–is a question of fact. Id.

"Summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001) (citing ATD Corp. v. Lydall, Inc., 159 F.3d 534, 540 (Fed. Cir. 1998)). When deciding whether summary judgment for non-infringement is appropriate, the court will look to whether the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, as such failure will, "render all other facts immaterial." Telemac, 247 F.3d at 1323 (citing London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1537 (Fed. Cir. 1991)).

## III. Analysis

Defendants contend that the AquaMax machine does not infringe Claim 1 of the '094 patent, as various elements of Claim 1 are not present in the AquaMax. Claim 1 of the '094 Patent reads as follows, with the disputed elements underlined and bolded:

> A machine for cleaning a surface including a chassis; a plurality of wheels mounted to said chassis for supporting the same; **storage means including a solution tank and a recovery tank for storing clean solution and spent solution respectively and mounted on said chassis in side-by-side relation and having a common opening**; dispensing means receiving solution from said solution tank for applying the same to the surface to be treated; recovery means carried by said chassis for recovering said solution after application to said surface and for depositing the recovered solution in said recovery tank; a **molded pocket of a material and thickness sufficient to retain a preformed shape under its own weight and flexible enough to be inverted to a correspondingly similar inverted shape and defining a lateral opening; and means for mounting said**

-14-

pocket to said storage means with said lateral opening of said pocket
proximate said common opening of said storage and recovery tanks, whereby
when cleaning solution is placed in said solution tank and said recovery tank
is empty, said pocket extends substantially entirely into said recovery tank in
said preformed shape under force of the weight of said solution, and when
said recovery tank is storing spent solution and said cleaning tank is
substantially empty, the force of said spent solution inverts said pocket and
forces it to extend substantially entirely into said solution tank such that said
spent solution does not contact the interior of said solution.

Each of the disputed elements of Claim 1 of the '094 patent will be addressed in turn.

### A. Does the AquaMax Have Storage Means With Side-by-Side Tanks?

The '094 patent claims a carpet cleaning machine with two tanks mounted side-by-side
on a chassis:

> storage means including a solution tank and a recovery tank for storing clean
> solution and spent solution respectively and mounted on said chassis in side-by-
> side relation and having a common opening.

Nilfisk contends that the AquaMax uses a tank-within-a-tank design, not side-by-side tanks.

Defendants contend that the AquaMax bladder, which acts as a recovery tank, is entirely

enclosed in the hull that forms the solution tank, and that the tank-within-a-tank design precludes

the AquaMax from having the necessary common opening that Claim 1 of the '094 patent

requires. Conversely, Plaintiff contends that based on its observation of the AquaMax machine,

the solution tank and recovery tank are mounted in side-by-side relation, and the tanks of the

AquaMax and the '094 patent have a common opening. Although Plaintiff contends that the

solution and recovery tank in the AquaMax machine are in side-by-side relation, notably, in

Palmer's (Plaintiff's expert) deposition, he testified that he believes that the recovery tank of the

AquaMax is completely enclosed inside the solution tank. See Def. Ex. 8, Gary Palmer Dep. Tr.,

p. 52, lines 22-25. Further, the drawings that Minuteman submitted in opposition to Nilfisk's motion for summary judgment clearly show that the recovery tank is completely enclosed inside the solution tank of the AquaMax. See Pl. Tab 1, Figures 1-4. Consequently, the evidence submitted by Minuteman does not contradict Nilfisk's contention that the recovery tank of the AquaMax is completely enclosed inside the solution tank. When one tank completely encloses the other, the tanks cannot be in side-by-side relation. Therefore, Minuteman has failed to raise a genuine issue of material fact concerning the structure of the solution and recovery tanks of the AquaMax machine. The evidence before the Court clearly shows that the solution and recovery tanks are not in side-by-side relation.[2]

### B. Does the AquaMax Have a Molded Pocket Mounted Between the Solution and Recovery Tanks?

The '094 patent also claims a molded pocket that is mounted to the two tanks in a specific way:

> a molded pocket of a material and thickness sufficient to retain a preformed shape under its own weight and flexible enough to be inverted to a correspondingly similar inverted shape and defining a lateral opening...

The Defendants contend that the AquaMax uses an internal bladder as a recovery tank and the cavity outside the bladder as a storage tank. Consequently, Nilfisk contends, the AquaMax does not contain a molded pocket. Additionally, Defendants argue that the pocket portion of the AquaMax that Minuteman holds out to be the molded pocket is not: (1) of a material and

---

[2] The Court notes that Plaintiff's failure to meet this one limitation of Claim 1 means that summary judgment is granted in favor of Defendants. However, the Court will proceed with addressing each of the claim limitations.

thickness sufficient to retain a preformed shape under its own weight; (2) flexible enough to be inverted to a correspondingly similar inverted shape; and (3) defining of a lateral opening. Conversely, Plaintiff believes that the AquaMax bladder is molded from a thick rubber very similar to the material of the pocket portion of the '094 patent, and the molded bladder is in the general shape of a boot, which includes a forward portion in the form of a pocket and a rear portion in the general form of a heel. Minuteman also believes that the pocket portion of the AquaMax is flexible enough to be inverted to a correspondingly similar shape, yet rigid enough to maintain that shape when inverted. Further, Plaintiff asserts that the pocket portion is molded of a material and thickness sufficient to retain a preformed shape under its own weight. Finally, Minuteman contends that the area where the pocket portion of the bladder is joined to the recovery tank portion has an opening directed towards the side. In addressing the Parties' arguments, the Court will discuss whether the AquaMax's molded pocket: (1) is of a material and thickness sufficient to retain a preformed shape under its own weight; (2) is flexible enough to be inverted to a correspondingly similar shape; (3) defines a lateral opening.

> *1. Does the AquaMax Molded Pocket Meet the Claim Limitations of the '094*
> *Patent?*

In its December 9, 2003 Claim Construction Opinion, the Court construed "preformed" to mean a "predetermined shape." Therefore, to meet this particular limitation of Claim 1 of the '094 patent, the molded pocket must be of a material and thickness sufficient to retain a predetermined shape under its own weight. Minuteman contends that its observations of the AquaMax show a molded pocket of a material and thickness sufficient to retain a preformed shape under its own weight, and that the bladder is formed from a molded rubber which is very

similar to the movable pocket of the '094 patent. Conversely, Nilfisk contends that the pocket portion of the bladder does not retain its shape under its own weight.

As an initial matter, after examining the illustrations of both parties, it is not clear that the AquaMax machine even *contains* a molded pocket. (See e.g., Pl. Tab 1, Figures 1-6). However, Plaintiffs appear to argue that the u-shaped nose or pocket portion of the bladder inverts or turns inside out between two positions. While it is true that the shape of the bladder's "nose" may change as recovered solution fills the bladder, Minuteman has not presented evidence to raise a genuine issue of material fact concerning whether the AquaMax machine contains a molded pocket. Because the AquaMax does not contain a molded pocket, the Court need not address whether the pocket is sufficient to retain its shape under its own weight, and whether the pocket portion of the bladder is flexible enough to be inverted to a correspondingly similar shape. Additionally, because the AquaMax does not contain a pocket portion, it cannot define a lateral opening, meaning "an opening situated on, directed towards or coming from the side." Further, because the AquaMax does not contain a pocket portion, there cannot be a means for mounting the pocket to the storage means, proximate to the common opening of the storage and recovery tanks. Finally, because the bladder does not contain a pocket portion, Minuteman cannot show that the AquaMax machine meets the limitations of the "whereby clause" of the '094 patent, as there is no pocket to extend substantially entirely into the recovery tank in its preformed shape under the weight of the cleaning solution.

Minuteman contends that Defendants should not prevail on their summary judgment motion merely because the bladder has no seams, lines, markings or changes in material at the dividing line, as there is nothing in Claim1 that requires that the recovery tank and the molded

-18-

pocket be formed from two separate structures and two different materials. However, there can be no doubt that in the '094 patent, the molded pocket is a distinct structure from the solution and recovery tanks. While it is true that the molded pocket and recovery tank need not be formed from two different structures or materials, there must be some portion of the bladder of the AquaMax machine that is able to retain its shape under its own weight. Minuteman has not presented any evidence that demonstrates that the nose of the AquaMax meets that particular limitation of Claim 1 of the '094 patent.

### C. Does the AquaMax Infringe the '094 Patent Under the Doctrine of Equivalents?

In addition, Minuteman asserts that even if combining the recovery tank and the molded pocket into an integral bladder avoids literal infringement, the AquaMax infringes the '094 patent under the doctrine of equivalents. The doctrine of equivalents allows recovery for infringement when, even though there are differences between the claimed invention and the accused device or method, the differences are insubstantial. Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 40 (1997). "Equivalency can also exist when separate claim limitations are combined into a single component of the accused device." Dolly, Inc. v. Spaulding & Evenflo Companies, Inc., 16 F.3d 394, 398 (Fed. Cir. 1994) (internal citations omitted). However, "[a]n 'equivalent' of a claim limitation cannot substantially alter the manner of performing the claimed function." Dolly, 16 F.3d at 400 (citing Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 935 (7th Cir. 1987)).

Plaintiff has failed to raise a genuine issue of material fact concerning whether the AquaMax infringes the '094 patent pursuant to the doctrine of equivalents. The evidence presented to the Court by both Minuteman and Nilfisk shows that the AquaMax machine does

-19-

not serve the function of the '094 patent. Specifically, Minuteman has failed to produce evidence raising a genuine issue of material fact concerning whether the AquaMax has a molded pocket, which retains its shape under its own weight, and when that molded pocket is propelled by incoming dirty solution, turns inside out, in order to accommodate the need for more space in the recovery tank than in the solution tank. Unquestionably, the lack of an invertible molded pocket is a substantial difference between the '094 and the AquaMax. Therefore, Plaintiff has failed to show that the AquaMax performs the claimed functions of the '094 patent. Consequently, there is insufficient evidence to raise a genuine issue of material fact concerning whether the AquaMax infringes the '094 patent under the doctrine of equivalents.

### D. Nilfisk's Motion for Attorneys' Fees and Costs

Finally, because the Court has granted Nilfisk's motion for summary judgment, the Court will set a briefing schedule on Nilfisk's motion for attorneys' fees and costs pursuant to 35 U.S.C. Section 285. Minuteman is to file a response to Nilfisk's motion for attorneys' fees and costs on or before October 8, 2004. Nilfisk is to file a reply in support of its motion for attorneys' fees and costs on or before October 15, 2004. Ruling will issue by mail.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to strike certain documents Plaintiff has filed in its motion opposing summary judgment is DENIED. However, Defendants' motion for summary judgment of noninfringement is GRANTED.

Enter:

David H. Coar
United States District Judge

Dated: **September 23, 2004**